Call the first case. Case 14 S. 3274. Norfolk Southern Railway Co v. Thomas Perez. Oral argument. Convicts seek 15 minutes. 15 minutes each year. If a convict is a mayor, he is a good lawyer. May it please the court. I'm John Lewis, representing petitioner Norfolk Southern Railway Company, and I would like to reserve five minutes for rebuttal. That's fine, and you may proceed. Thank you, Your Honor. This appeal begins and should end with the plain language of the Federal Railway Safety Act, FRSA, and an understanding of the unique nature of the Railway Labor Act. Court decisions have referred to that act as arcane. I know at least one judge has told me he thought it was like quantum mechanics. But, on the other hand, it is, if you understand the history from 1926 when it was passed to the 34 amendments, it all fits together in a unified whole. The FRSA, and that's what we're dealing with today, trying to gain an understanding, and petitioner believes that understanding can be gained solely by review of the words. And, in this case, Section F, which is what we're dealing with, is a statutory election of remedies provision provides that an employee may not seek protection under both this section and another provision of law for the same allegedly unlawful act of the rail carrier. Now, we believe that's understandable. If you look at the language, you understand what the Railway Labor Act is about. But, in a narrow decision, the review board, we believe, misinterpreted the phrase seeks protection under another provision of law. And, in a narrowly written decision, and it's in the appendix at 6465, the Administrative Review Board interpreted that section as meaning that RLA Section 3 is not another provision of law so as to trigger that election of remedies provision. And the... Mr. Counsel, if I could, if we agree with your argument, do we not put ourselves in conflict with the Fifth and Seventh Circuits? Well, I think each circuit has the obligation and the right to review these decisions based on the language. I absolutely understand. I'm just wondering... Yes, how would you distinguish the Fifth and Seventh Circuits? Yeah, I think in the Fifth Circuit, essentially, in a very tersely worded opinion, followed the Seventh. And we believe that, essentially, the Seventh misinterpreted several provisions of the Railway Labor Act as well as the FRSA. And those provisions included what was law, what it meant to seek protection, and what was provision of law for the same unlawful act. So we believe that those courts, kind of acting in tandem, one essentially following the other, just were wrong. And going back to the Board, they, and they followed others as well, said, well, the Railway Labor Act isn't what we're talking about. What we're talking about is the collective bargaining agreement. And this was simply a grievance. And so a grievance couldn't amount to another provision of law. How do you harmonize the subsequently adopted language in subsections G and H? Yes. That seems to me to be the problem. Some courts have found that that is a problem. Some have never gotten that far, Judge Carr. We believe that they can be harmonized. Number one, F, in 2007, the Act was amended, as you all know. They left F in there. So, obviously, F was meant to have meaning. If you look at H, we believe it can be harmonized. It talks about rights, privileges, and remedies of any employee under federal, state, or under a collective bargaining agreement. Well, in this provision, we believe that those terms were meant to protect any and all rights, claims, remedies. And in our brief, we've contended essentially there are hybrid rights here. There are federal rights and there are rights that arise from a collective bargaining agreement. H is meant to protect rights that may not rise to the level of an RLA proceeding or arbitration. How do you get to that conclusion? Well, there could be a right in the collective bargaining agreement or a privilege or a remedy. And the employee might rely on that, on the property handling. Whereas in F, when they're talking about a provision of law, in our view, once you apply to the National Railroad Adjustment Board or a public law board, then you are acting pursuant to the Railway Labor Act. The Railway Labor Act provides a number of things, but one is the right to arbitrate, paying the arbitrators, setting the standards, making any award enforceable, and setting the grounds for scrutiny of awards. Doesn't your ability to benefit from those rights arise ultimately from the terms and conditions of the collective bargaining agreement? We believe it's hybrid, yes. And I think our brief says that. But the enforceability and the ability of the individual, without a union, to represent himself or herself before the NRAB or a public law board, but particularly the NRAB, that arises by the statute. The statute provides the background and the backbone, the protection from those rights, for those rights. So yes, Your Honor, they do arise. The genesis is the collective bargaining agreement. But the enforceable backbone, what gives the employees rights that they so eagerly sought in 1934, that comes from the Railway Labor Act. And that's what confuses and distinguishes that from the National Labor Relations Act. The NLRA mandates arbitration. It's not, we'd like to encourage it, it's mandated. And then they provide an effective mechanism for that. Is the mechanism effective as to retaliation claims? It is not. It does not. It's not even allowed, right? It does not specifically go to retaliation, Judge Griffin. Well, the 2007 amendments, the retaliation claims must go to the Secretary of Labor, do they not? They do after those amendments, Your Honor. But we don't believe that the language of the statute, and we believe that that's another misinterpretation. We believe it is a looking to remedies. But the remedies, it's the remedy for the act. So the act might be suspension or dismissal. Isn't retaliation an act in itself? And aren't they separate? In other words, what's the unlawful act? One is the allegedly improper discipline for excessive speed. I mean, in employment discrimination law, there'd be two separate causes of action. One for the discrimination and one for the retaliation. I'm sorry, Judge Garza. Go ahead, no problem. One is meant to address, when it says another provision, that is referring back to the FRSA. So they're saying another provision dealing with unlawful. So they're talking about another law, not a law that is exactly the same as the FRSA, but another law that would protect employees' rights. As we know in these cases, they did work. The employees were given remedies. We're looking at protecting the employees' rights. They cannot bring the retaliation claim in arbitration. And under your theory, if they bring claims for anything else arising from their suspension, discharge, termination, whatever, then they're barred from pursuing retaliation, even though they've never had it adjudicated and they never could present it. It doesn't seem to make any sense. And it doesn't seem like the employee is electing a remedy. Electing usually means I have a choice of a forum. I have a choice to go here or there. Here, if he pursues some of the claims arising from his discharge or suspension, then he can never pursue a retaliation claim. And that doesn't just seem right. The retaliation claim that you're making reference to is under the FRSA. I think we have to put this in perspective. There are other claims, a plethora of other claims, that the individual can bring if he or she also brings one under the CBA. In other words, Title VII, 1981, all those, they can be brought. It's just based on the legislative history and the plain language. You can't bring FRSA and CBA. You say it's clear. I don't know. I mean, you've got one amendment after another amendment after another amendment. We're trying to put them all together to see if they make any sense. That's correct. Here, if there is an ambiguity, should we not defer to the Department of Labor's interpretation, at least somewhat? We don't believe Chevron deference here is appropriate, first of all, because it is unambiguous in our view once you put the parts together and construe it as a whole. And number two, the Secretary of Labor isn't authorized to interpret FRSA. And at the same time, the Secretary is interpreting the RLA, which clearly is not appropriate. So we do not think they're entitled to any deference other than the compelling nature of their interpretation. My time has expired. Thank you. Thank you, Mr. Lewis. May it please the Court. My name is Rachel Goldberg. I represent the Secretary of Labor. I'll be taking ten minutes, and Intervenors Council will be taking five minutes. The plain language in the Federal Railroad Safety Act, FRSA's Election of Remedies provision, indicates that it is a narrow provision, that it does not cover an employee who seeks protection to enforce, through an arbitration before an adjustment board, the terms that were negotiated as part of his collective bargaining agreement. That's clear from the statutory language, as well as the history of the Election of Remedies provision, both its prior version and the legislative history behind it. An employee seeking or... I gather then you would contend that the anti-dilution language simply reinforces that view of subsection F. Is that correct? Yes, Judge Carr. I think they can be read harmoniously, in that the Savings Clause broadly protects pursuit of other rights. And the Election of Remedies provision would, as Judge Griffin recognized, foreclose an employee who pursues an arbitration from ever seeking any protection for alleged retaliation. The Savings Clause was meant to not have any preemptive effect, not diminish rights. The way they can be read harmoniously is if the Election of Remedies provision is read narrowly to apply to statutes that provide substantive, similar whistleblower protections. It doesn't have to be exactly the same, but whistleblower protections aimed at safety and security. As the legislative history made quite clear, it was aimed at preventing an employee from pursuing both an existing remedy that was applicable for certain railroad employees under the OSH Act, which is a whistleblower protection statute, and under the newly enacted FRISA at that time. And it's clear that that's what it was aimed at. And when Norfolk Southern, in their briefing, talks about inconsistent results that could result from both a CBA arbitration and a FRISA retaliation claim, the inconsistent results that the Election of Remedies was aimed at preventing was inconsistent results from two whistleblower actions. It certainly was not aimed at inconsistent results between the CBA and the FRISA, because the CBA also runs concurrently. An employee can also pursue any other employment discrimination claim as opposing counsel recognizes. An employee can pursue a CBA arbitration and a Title VII claim, an age discrimination claim. Likewise, those could result in inconsistent results. An FVLA claim. Exactly. Certainly the CBA does not permit an employer to violate federal law, and the Supreme Court recognized that in Hawaiian Airlines v. Norris, where the Supreme Court said the rights under a state whistleblower statute were enforceable notwithstanding the terms of the CBA. So the inconsistent results argument is reading the Election of Remedies too broad. But you can have inconsistent results from CBA and retaliation. I mean, you can have a case where they had just cause to discipline an employee, but despite that just cause, they retaliated against him. And therefore, they are liable under retaliation, even though they had just cause to do what they did, but it was retaliatory. Yes, I think that's right. I mean, they are, yes, inconsistent results, but it's not like the CBA proceeding gets to trump the federal statute that the employee is seeking protection under. As this Court has recognized, two courts of appeals. There's an analogy I try to draw between separate causes of action in a Title VII case for determination and then retaliation. Normally, you have a substantive claim, and if you had basis for it, you could also separately, as a separate cause of action in the same complaint, bring a retaliation claim. I mean, it seems to me it's the same situation here. I think that's what Judge Griffin is saying. That's why, even further, what's the unlawful act here? Is it the suspension? Or is it what underlies the suspension, the charge that was found to be unfounded of being responsible for excessive speed? Is it that charge contention itself? Was that, quote, unlawful? And then the retaliatory motive. Do you understand what I'm saying? Yes, I think so. I mean, does that make sense at all? Or if not, that's fine. No, I think that makes sense. How do you define the term unlawful act? Is the act the suspension? Or is the act sort of the preceding decision to charge somebody with a disciplinary violation, excessive speed, when in fact he was not responsible for it, and retaliating, being motivated? I think the latter. And that's clear from the use of the term unlawful act. It's not just the act. It's not just the suspension. It's the unlawful act, which also further indicates why the election of remedies provision should be interpreted narrowly. As this court has recognized, the Seventh and Fifth Circuits have both reached the same conclusion. Several district courts have reached the same conclusion. And Norfolk Southern would ask this court to reject those well-considered opinions and to create a circuit split. Has any court ruled the other way? Not that I am aware of, no. The way that Norfolk Southern wants us to interpret them? No. Before the 2007 amendments, a district court in Serato was... But it was different. That changed everything in 2007. It did, exactly. That had to do with preemption. And this is very different now. So no court that I am aware of has ruled in favor of Norfolk Southern's argument. And there are a number of district courts, are there not, that have ruled the same way that the Fifth and Seventh Circuits have ruled? Yes. It's pretty much unanimous as far as I know. What about rationale? Do they foul the Fifth and Seventh Circuits' rationale? Generally, yes. The Seventh Circuit took a slightly different approach to the statutory language, although it recognized that it might be just a matter of semantics, in that it didn't focus just on another provision of law. It focused on seeking protection under another provision of law and the concept that an employee who is pursuing an arbitration of a CBA dispute is not seeking protection under the Railway Labor Act because the Railway Labor Act isn't the source of the rights that the employee is seeking protection under the CBA. Do you agree with that view? Yes. I have problems with that. It seems to me to be playing games with the words. I mean, the common sense... It seems to me the colloquial understanding to seek protection is to, you know, apply for the benefit of or take advantage of, and I read your brief and the argument, and I think you've got strong arguments, Candidly, but explain that to me. Why am I wrong to be so hesitant about adopting that view? Well, when an employee seeks protection and pursues a CBA arbitration, they're seeking protection of some term that they negotiated in the contract. They're not seeking protection of anything that the RLA itself provides. For example, if the railroad refused to arbitrate and they were claiming that the railroad should be forced to arbitrate, yes, they would be seeking protection under the RLA because the source of that right is the RLA. But when they're seeking protection for a term that they negotiated to include in their CBA, they're seeking protection... The shield that they have is within the collective bargaining. Exactly. And the sword that they may have is the arbitration. But the protection comes, is founded in, and is solely dependent upon the collective bargaining agreement. Exactly. And the Supreme Court recognized that the RLA has no say in what terms are included in a CBA. That's entirely up to the parties to negotiate. As the Seventh Circuit noted, the RLA is agnostic as to the terms that are included in a CBA. If the Court has no further questions... I do. You also argue that the Secretary of Labor's interpretation of the statute is entitled to Chevron deference, just looking at the brief. I mean, are there cases that have adopted that argument? Well, most cases, most courts have found the language to be plain, and so they didn't need to reach the issue of whether deference should be accorded. And that is our position here, that the language is plain. That was the ARB's interpretation. Back up. So if this Court were to find that it is ambiguous, and a few district courts have found it to be ambiguous, but the majority have found the language to be plain. But if this Court were to find it to be ambiguous, then yes, we would argue for Chevron deference because clearly the Congress delegated to the Secretary of Labor the power to adjudicate FRISA claims. And that's a clear delegation of authority that comes with Chevron deference. You argue that the Secretary of Labor only has authority over one statute, not the other, and therefore there's kind of a divided responsibility here, and therefore the interpretation can't be used for the whole case. How do you respond to that? Well, what the ARB was interpreting was a provision in FRISA. And yes, it looked to the RLA to understand why a CBA claim is not a provision of law within the meaning of FRISA, but it wasn't fundamentally interpreting the RLA if you go back and look at the ARB's decision. It's very much focused on the plain language and the election of remedies provision and other provisions within FRISA. Thank you. I will note that I find it interesting that both you and your opponent agree that the language is plain. And if so, what are we doing here? What's the fuss all about? Good morning, Your Honors. My name is Robert Harrington. I represent the intervener in this case, Mr. Marcus Cruz. I'd like to first thank you for allowing us to intervene in this very important matter. I'd like to very quickly go back to the issue of unlawful acts. And I think it's important in the railroad industry to understand that discipline in and of itself isn't per se unlawful. For example, in this case, Mr. Cruz's co-worker, his engineer, Mr. Lawson, was disciplined. There was nothing unlawful about it. The employer has the inherent right to discipline their employees when they do things they deem wrong. There's nothing unlawful about that. What is unlawful in this case was Mr. Cruz's engagement in a protected activity was related to his adverse employment action. He filed an injury report. And when he filed that injury report, he was met after he came back from injury and told he was going to be followed. He was followed. They then essentially waited for him to get in a locomotive. It's my understanding that the railroads generally very emphatically make clear, if you're injured, you have to tell us. Correct, and he did. If you're injured, you could be disciplined for not telling them. Am I correct? That is correct. And he did. He was injured in March of 2010, and he did. He reported it immediately. Then he was off disabled. And then he came back and had a meeting, which is common, a return-to-work meeting with the superintendent, who was also the decision-maker in his on-property investigation, which was the subject of the CBA matter. But it's important to note that the unlawful act is retaliation. This isn't as complicated as I think the railroad wants to make it. And as much as Section F is somewhat narrow, if Mr. Cruz in the fall of 2010 had initiated a claim, for example, under the Michigan Whistleblower Protection Act, a state-based claim, and then tried to have an FRSA claim, that would trigger it. That would trigger Section F. That's what Section F is designed for. And I think it reads completely in line with Sections G and H. And Section H specifically states that, nothing in this section shall be deemed to diminish the rights, privileges, or remedies of any employee under any federal or state law or under any collective bargaining agreement. Congress knew that. Now, it's important to note, there is only one collective bargaining agreement they could be talking about. It's the collective bargaining agreement that Mr. Cruz or any other railroad employee's union negotiates with the railroad. That's the only one. So the plain language of the statute, in my opinion, states that he can have both. They wanted their rights to be enhanced, not diminished. And it also reads completely in line with Section 20109E, which is the damages section of the FRSA, which basically states, Congress said, you can recover under this regulation to the extent to make the employee whole. Meaning, Congress knew that the employee had other remedies available to them to get to make them whole. And that's exactly what happened here. Mr. Cruz, the Public Law Board didn't remove his suspension. They deferred it and essentially held it over his head. So if he did anything wrong, it would be an escalator in the future. But they didn't completely remove it. And Judge Garrity at the ALJ did do that. So he was made whole. The system worked, and it worked very well. I also want to go back very quickly to the Fifth Circus decision in Grimes. The railroad has consistently throughout the briefs, and I think again here today, wants to downplay the Fifth Circus decision in Grimes because they claim it just adopted Reed. I would suggest that the Fifth Circuit deliberately decided the issue. Reed is so reasonable and logical that they adopted it. They said this makes complete sense, and it does. So I wouldn't cast the Fifth Circuit's decision in Grimes aside. With regard to other courts, to my knowledge to date, it's 12 out of 12 in favor of the employee on this issue. There has not been a federal district court or a circuit court that has decided in favor of the railroad on the election of remedies issue. And lastly, I want to leave you with the fact that the purpose of the regulation was there was a problem in the industry. There was a problem with harassment and retaliation against employees for engaging in certain activities, specifically filing accident reports, reporting safety concerns, and Congress knew that. And they said, we want to try to basically unfreeze these acts. We want employees to freely be able to walk up to their supervisor and say, we have a tank car here that's leaking, and it can't go on the road. And they don't want them to be disciplined for that. They don't want them to be adversely treated for that. That's the point of the regulation. In adopting the railroad's position here, all the retaliatory conduct that occurred to Mr. Cruz, all the facts of this case, Mr. Evelyn saying that he was waiting for him to nail him, and he did, would have gone totally undiscovered, which in my opinion would totally undermine the purpose of the act. Thank you very much. Okay, thank you, Mr. Harrington. Mr. Lewis, you have your rebuttal. Thank you, Your Honor. Just to pick up on a few issues, a number of tribunals who have looked at this have not gone beyond provision of law. So there are, if you review the totality of the case law, there are holes where even those courts that we think improperly parsed the language didn't get to, and one was an unlawful act of the carrier. Now I'm jumping ahead, but clearly we're talking about something that language relates back to a provision of the FRSA here. And if you adopt the Secretary's very expansive reading of that, the only thing that an employee would be foreclosed from bringing is some kind of a narrow federal whistleblower act or perhaps a state whistleblower act. But that is nowhere in the statute. There's nothing to indicate, either in F, G, or H, that the intent is to leave the whole area and only restrict to a very narrow classification of whistleblowing based on health and safety. The Act certainly doesn't say that. The background of the Act indicates that speed and avoidance of duplicative litigation is one of the motivations. So causing employees to raise claims in these certain tribunals certainly furthers that, not restricts it. Has there been a problem in the last, what, seven years since these amendments to the statute? Has there been a flood of multiple claims out of the statute? I'm sorry, there has been. There has been a dramatic increase in these claims in the last few years. I don't have all the statistics. That's not part of the record, I'm just curious. Yeah, but there has been. It's pretty much been a tremendous expansion of the claims because if the rights exist. And again, I want to bring to the Court's attention that this preclusion operates in a very narrow way. And the Lee case and the other case that the Court mentioned both arrived at different conclusions that the word Act here is supposed to have meaning. So the Act, and this is not unusual to employment law, the Act is the dismissal, it's the suspension. So it makes sense. You've got other potential remedies for that Act. If you parse that and say, well, it was whistleblowing or he stood up at a meeting or something, so it would be the very fact pattern or motivation. That's nowhere in here. The legislature could easily have cured that if that was the intent. Just like in H, if they wanted to further restrict F, it would have been so easy to do that. Instead, F, which came into the law in 1980, was retained in 2007 and these were added. And we know that there are some specific motivations for these, including in the early days when the state claims were brought, issues of preemption arose. And I think in our view is that H and G were meant to eliminate those kind of preemption of state whistleblower or wrongful discharge public policy claims. They're not preempted. But it was nowhere meant to change F. And as we know, historically, Congress thought that the Section 3 statutory arbitration system was perfectly fine. They allowed these claims to be arbitrated in front of a neutral arbitrator paid by the federal government. And all of a sudden, with these two, a revolution is brought and provision of law no longer means the RLA because the case law from this circuit indicates that that is the backbone. Yes, it's hybrid. There are rights under the CBA to be sure, but when you take that appeal to these federally mandated and funded tribunals like the NRAB, that changes. You are then getting protection under law. Has there been any effort as these cases have arisen by either the railroads or the unions to go back to Congress and say, look, fix it, tell us what you... I mean, aside from Congress, generally I'm saying let's assume that it would be responsive. Has that effort been made? I'm not aware of any, but I do know that the courts are struggling to come to grips with the exact meaning of various provisions of this statute since it is relatively new, 2007. So there are cases in the various federal courts trying to come up with a proper and plain meaning understanding of the Act. With that, I will sit down. Thank you all. Thank you, Mr. Lewis, Ms. Goldberg, and Mr. Harrington. Appreciate your arguments today. The case will be submitted, and you may call the next case.